```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

RASHAD KARIM AMEEN BEY,      :    Civil Action No. 07-1896(NLH)
                             :
          Plaintiff,         :
                             :
     v.                      :    OPINION
                             :
ERIC DEL FAVA,               :
et al.,                      :
                             :
          Defendants.        :
```

**APPEARANCES:**

Rashad Karim Ameen Bey
60 Orlando Drive
Sicklerville, NJ 08081

   *Pro se*

Michael O. Kassak, Esquire
David M. Ragonese, Esquire
White & Williams, Esqs.
457 Haddonfield Road
Suite 400
Cherry Hill, NJ 08002-2220

   *Attorneys for Eric Del Fava, Michael Diamond, and Winslow Township*

Donna M. Whiteside, Esquire
Office of Camden County Counsel
Camden County Courthouse
520 Market Street
14th Floor
Camden, NJ 08102-1375

   *Attorney for the Camden County Prosecutor's Office and Camden County*

**HILLMAN**, District Judge

   This matter has come before the Court on defendants' motion for summary judgment on all of plaintiff's claims alleging

various constitutional violations.  For the reasons expressed below, defendants' motion will be granted.

## BACKGROUND

On March 28, 2007, defendant Eric Del Fava, a police detective with Winslow Township Police Department, along with the Winslow Township Stakeout Unit, performed a search on 60 Orlando Drive, Sicklerville, New Jersey, which is the residence of plaintiff, Rashad Karim Ameen Bey.  The search was performed because the police believed that evidence of burglaries and thefts allegedly committed by plaintiff's step-son, Sadao Scafe, would be found at the residence.

Plaintiff claims that this search was unreasonable and unlawful in violation of his Fourth Amendment rights.  Plaintiff also claims that his arrest during this search was without probable cause.  Plaintiff has asserted these claims against Del Fava, the Honorable Michael Diamond, JMC, Winslow Township, the Camden County Prosecutor's Office, and Camden County.  All defendants have moved for summary judgment on plaintiff's claims.

## DISCUSSION

**A.   Jurisdiction**

Because plaintiff has brought claims pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights, this Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits

3

or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

   **C.   Analysis**

   Plaintiff's complaint can be construed as asserting three claims for violations of his Fourth Amendment rights: 1) search of his home without probable cause; 2) excessive force in the execution of the search; and 3) false arrest.  Prior to analyzing these claims substantively, however, these claims against defendants Judge Michael Diamond, Winslow Township, the Camden County Prosecutor's Office, and Camden County must be summarily dismissed.

   First, the claims against Judge Michael Diamond must be dismissed because he is entitled to judicial immunity.  A judge is entitled to absolute immunity from civil suits for actions arising from his or her judicial actions.  See Mireless v. Waco, 502 U.S. 9, 9-10 (1991) (explaining that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages," and that "judicial immunity is not overcome by

4

allegations of bad faith or malice"); Pierson v. Ray, 386 U.S. 547, 553-554 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction . . . ."). Judge Diamond's only involvement in the search of plaintiff's residence was to sign the search warrant authorizing the search of 60 Orlando Drive. Plaintiff claims that the signing of the search warrant was a "malicious act." This claim is barred, however, because it arises solely from Judge Diamond's judicial actions.[1]

Next, plaintiff's claims against the Camden County Prosecutor's Office and Camden County fail because plaintiff has failed to allege, or provide any evidence of, how these entities had any involvement in the search of his residence or his arrest.

Finally, plaintiff's claims against Winslow Township fail because he has not alleged, or provided any evidence of, how the Township violated his constitutional rights.[2] Liability under §

---

[1] In his opposition papers, plaintiff also claims that Judge Diamond was rude to plaintiff in previous court appearances. Even if plaintiff asserted this claim in his complaint, it would be barred because this claim also arises solely from Judge Diamond's judicial actions.

[2] Additionally, plaintiff's claim for punitive damages against Winslow Township fails because it is well-established that municipalities, and more broadly, state and local governments entities, are immune from punitive damages under § 1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981); Doe v. County of Centre, PA, 242 F.3d 437, 455 (3d Cir. 2001).

1983 may be imposed on municipalities only where acts of the government employee are deemed to be the result of a policy or custom of the municipality for whom the employee works.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); see also City of Canton v. Harris, 489 U.S. 378, 392 (1989) (holding that a county cannot be subjected to § 1983 liability on a theory of respondeat superior).  In his opposition papers, plaintiff states that the "Chief of Police is responsible for the training and behavior of his employees, they are not to deviate from the dictates of the police training manual."  (Pl. Opp. ¶ 10.)  This statement is insufficient to prove his claim against the Township because it does not show how any policy or custom of the Winslow Township caused its police officer to violate plaintiff's constitutional rights.  At most, plaintiff's statement alleges that the police officers who entered his home violated their training.  Implicit in such a statement is that the police officers' training manual is the proper method by which to conduct themselves.  Thus, if the training manual provides the proper way for police officers to conduct themselves, then the police department and the Township cannot be said to have instituted a policy that is violative of plaintiff's constitutional rights.  In any event, plaintiff's conclusory statement is insufficient to support his

6

burden on summary judgment to prove the Township's § 1983 liability.[3]

Turning now to plaintiff's three Fourth Amendment violation claims against Detective Del Fava, the Court holds that plaintiff has failed to meet his burden to defeat summary judgment.

The following facts set forth the circumstances of the March 28, 2007 search of plaintiff's home and his arrest. On March 21, 2007, Judge Diamond signed the search warrant for plaintiff's residence. The basis for the search warrant was the investigation by Del Fava of burglaries of other homes in Sicklerville in November 2006 through March 2007. During one particular burglary in December 2006, $5,000 worth of property was taken, including cash, jewelry, electronic items, and cell phones. A juvenile who was arrested for that burglary stated that Sadao Scafe, plaintiff's step-son, had sold the stolen property. Del Fava secured an arrest warrant for Scafe for his participation in the December 2006 burglary.

Subsequently, Scafe was arrested for two other burglaries. When Scafe was arrested, he provided the address of 60 Orlando Drive as his residence, and his school records showed that his

---

[3]Plaintiff also claims that there have been eight other civil actions filed against the Township. Without providing evidence of what these civil suits involve, and how they relate to plaintiff's claims, the fact that other lawsuits are pending against the Township is insufficient to support a claim that the Township had any type of policy or custom.

address was 60 Orlando Drive.  Based on Del Fava's investigations of the burglaries, he determined that there was probable cause to believe that evidence of those burglaries would be found at Scafe's residence.  Del Fava filled out an application for a search warrant for 60 Orlando Drive, which was signed by Judge Diamond on March 22, 2007.

On March 28, 2007, Del Fava, along with the Winslow Township Stakeout Unit, executed the search warrant at 60 Orlando Drive.  Del Fava believed that the Stakeout Unit was necessary to protect the safety of the officers and residents in the home.  This was based on the following facts: 1) two prior police reports identifyed plaintiff as initiating acts of violence against other individuals; 2) a report from plaintiff's son regarding a history of abuse, including attempted assault with a baseball bat; 3) a report from plaintiff's daughter that he punched her in the face and she was afraid for her safety; 4) background criminal check of plaintiff which revealed a prior arrest for robbery; 5) criminal background check of the owner of a car parked out front of the home which revealed that the owner had an outstanding bench warrant and had been convicted of resisting arrest and possession of CDS; and 6) two bench warrants for plaintiff's arrest for failure to appear in municipal court.  A member of the Stakeout Unit knocked on the door several times, and after no response, the Unit entered the house.  Del Fava followed behind.

8

Plaintiff, his wife, and two year old child were at home, and according to plaintiff, they were upstairs and in bed at 6:45pm.  After Del Fava searched the house, he recovered four cell phones, two pieces of jewelry, and one silver I-pod.  One of the cell phones matched one of the stolen pieces of property taken during the December 2006 burglary.  Because Del Fava had discovered during his investigation that there were two outstanding bench warrants for plaintiff's arrest, Del Fava also placed plaintiff under arrest.  Plaintiff was charged with resisting arrest because he refused to allow himself to be handcuffed.

With regard to the search and arrest, plaintiff contends that the search of his home was without probable cause; Del Fava used excessive force in the execution of the search[4]; and he was falsely arrested.  None of these claims can stand.

First, with regard to plaintiff's contention that the search of his home was without probable cause, a search is reasonable, and thus not violative of the Fourth Amendment, if it is supported by a valid search warrant. United States v. Ward, 131 F.3d 335, 340 (3d Cir. 1997); Los Angeles County, California v. Rettele, 127 S. Ct. 1989, 1993-94 (2007) ("When officers execute a valid warrant and act in a reasonable manner to protect

---

[4]Plaintiff does not allege that Del Fava used excessive force in effecting his arrest.

9

themselves from harm, . . . the Fourth Amendment is not violated."). Here, because the search of plaintiff's home was pursuant to a valid search warrant, his claim that the search of his home was without probable cause is without merit.[5]

Second, plaintiff's contention that Del Fava used excessive force in the execution of the search is also without merit. Plaintiff claims that the Del Fava and the other officers, "[w]ith out knocking or ringing the doorbell to state having a search warrant," and breaking two locks and "busting in a metal front door," "came running upstairs screaming police we have a

---

[5]Plaintiff does not appear to be challenging the validity of the search warrant. Even if he made such a claim, it would fail. The Third Circuit has explained,

> A section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in Franks v. Delaware, 438 U.S. 154, 155-56 (1978). . . . Under Franks and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. See Franks, 438 U.S. at 171-72.

Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (other internal citations omitted). Plaintiff has not submitted any evidence that Del Fava "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant."

10

search warrant, with SWAT uniforms, mask, machine guns and automatic weapons of mass destruction pointed at Mr Bey, wife, and daughter and told us to get on our knees." (Compl. ¶¶ 8-9.) Plaintiff claims that while they were on their knees, Del Fava interrogated him, and Del Fava and the other officers "continued running up and down the stairs, basement, and garage fanatically screaming, all clear, as if to be performing some military exercise." (Id. ¶ 10.)

Plaintiff claims that Del Fava and the Stakeout Unit's actions were excessive because his family "was certainly not a threat to them." (Pl. Statement of Facts ¶ 9.) Plaintiff also challenges the reasons Del Fava asserted for requiring the presence of the Stakeout Unit. Mainly, plaintiff argues that his step-son was not the proper target of the investigation into the burglaries, and that if his step-son did commit those burglaries, he and his wife would have not let him into their home. (See generally id.)

In determining whether excessive force was used during the execution of the search warrant, the Fourth Amendment's "objective reasonableness" test is applied.[6] Mellott v. Heemer,

---

[6]This reasonable test is done in the context of the qualified immunity analysis:

> Qualified immunity protects law enforcement officers from being tried for actions taken in the course of their duties. If the immunity applies, it entitles the

11

161 F.3d 117, 122 (3d Cir. 1998); Sharrar v. Felsing, 128 F.3d 810, 820-21 (3d Cir. 1997) (citing Graham v. Connor, 490 U.S. 386, 396 (1989)). The objective reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. (relying on Graham, 490 U.S. at 396; Groman v. Township of Manalapan, 47 F.3d 628, 634 (3d Cir. 1995)). The Third Circuit has instructed:

---

> officer to be free of the 'burdens of litigation.' But the immunity is forfeited if an officer's conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.' To determine ... whether the officers have lost their immunity, we must engage in a two step analysis. First, we must decide 'whether a constitutional right would have been violated on the facts alleged . . . .'
> Second, if we believe that a constitutional violation did occur, we must consider whether the right was "clearly established." The question is 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.' This is an objective inquiry, to be decided by the court as a matter of law.

Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004) (citations omitted).

   Because the Court finds that Del Fava has not committed a constitutional violation, the qualified immunity analysis stops there. Saucier v. Katz, 533 U.S. 194, 201 (2001) (stating that "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

12

> When balancing these factors, we must remember that "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather then with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 396-97. We must also keep in mind that a threat that may seem insignificant to us in the security of our chambers may appear more substantial to a reasonable officer whose own life or safety is at stake.

Mellott, 161 F.3d at 122.

In Mellott, the plaintiffs had refused to move out of their property even though the property was sold at a public auction, and the bankruptcy court had issued an order directing them to vacate the premises. Id. at 119. A team of six deputy United States Marshals were authorized by writ to remove the plaintiffs from the residence. Id. at 120. The plaintiffs claimed that the deputy marshals pointed loaded guns at their heads, chests, and backs; one plaintiff claimed that she was also pushed into a chair on two occasions; and another plaintiff claimed that he was also led at gunpoint into a potentially dangerous situation. Id. at 122. The court found that this did not constitute excessive force, "in light of the reports of the Mellotts' threatening behavior, the uncertainty of the situation confronting the marshals during the eviction, and the lack of any physical injury to the plaintiffs." Id. at 123.

Here, the evidence in the record demonstrates that Del Fava and the Stakeout Unit were reasonable in their efforts to effect the search warrant of plaintiff's property.  Del Fava and the Unit officers were faced with considerations similar to those in Mellott:  Del Fava identified six reasons why the Stakeout Unit was necessary to assist in the execution of the warrant, with several of those reasons constituting evidence of plaintiff's alleged history of violence.  Also similar to Mellott, there was no physical injury to plaintiff or his wife and daughter.

In the Court's view, plaintiff here alleges a use of force at or below the level of force that the deputy marshals used to evict the Mellotts.  The extent of plaintiff's allegations is that the officers entered through a locked front door, and they told plaintiff and his family to kneel on the ground with guns pointed at them while other officers swept the house to make sure it was "all clear."  As in Mellott, the officers' actions were reasonable under the circumstances.[7]  Because Del Fava knew of plaintiff's history, as well as the criminal history of a person whose car had been parked in front of plaintiff's house, it was reasonable for Del Fava to request assistance in the search, and it was reasonable for the officers to control the occupants of

---

[7]Plaintiff has not specifically alleged Del Fava's conduct separate from that of the officers in the Stakeout Unit, and he has not asserted his claims against any member of the Stakeout Unit.  Even attributing all the actions alleged by plaintiff to Del Fava, plaintiff's excessive force claim still must fail.

14

the house until it was determined that they were unarmed and that no one else was in the house.  Even though plaintiff attempts to discount the basis for Del Fava requesting the assistance of the Stakeout Unit, it is not whether the basis is ultimately unfounded, but rather what the officers believed the circumstances to be, and whether there was an immediate threat to the safety of the officers or others.  <u>Graham</u>, 490 U.S. at 396.  Because it was reasonable of Del Fava to believe that he needed the additional support of the Stakeout Unit, Del Fava is entitled to summary judgment on plaintiff's excessive force claim.

Finally, plaintiff's claim of false arrest also fails.  Plaintiff claims that he was arrested without probable cause and without a warrant.[8]  The evidence on the record clearly shows,

---

[8] Despite what he claims in his complaint, plaintiff admits that there was a valid warrant for his arrest.  (Pl. Dep. at 32.) Additionally, it is unclear whether plaintiff is claiming that his charge of resisting arrest while Del Fava was attempting to arrest plaintiff pursuant to the arrest warrants was made without probable cause.  Even if plaintiff made such a claim, it would fail.  A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. <u>Devenpeck v. Alford</u>, 543 U.S. 146, 152-53 (2004).  Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.  <u>Id.</u>; <u>Orsatti v. New Jersey State Police</u>, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted) ("Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt.  Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.").

15

however, that there were two outstanding arrest warrants for plaintiff's arrest.  (See Def. Ex. E.)  Thus, the issue is whether under these circumstances, plaintiff's § 1983 claim against Del Fava for false arrest can stand even when his arrest was made pursuant to a valid warrant.[9]

The Third Circuit has instructed that "a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant'; and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'"

---

Here, Del Fava states that because plaintiff refused to allow himself to be handcuffed, he was charged with resisting arrest.  Plaintiff admits in his deposition testimony that when Del Fava attempted to handcuff plaintiff, he put his hand down to his side.  (Pl. Dep. at 32.)  Further, the allegations in plaintiff's complaint and statement of facts demonstrate that it was not unreasonable for Del Fava to believe that plaintiff was resisting being arrested.  Consequently, any claim for a Fourth Amendment violation for resisting arrest is unavailing.

[9]It is also important to note that even if Del Fava did not have a search warrant allowing him to enter plaintiff's home, Del Fava would have been permitted to enter plaintiff's home to arrest him pursuant to a valid arrest warrant.  See U.S. v. Agnew,407 F.3d 193, 196 (3d Cir. 2005)(stating that Payton v. New York, 445 U.S. 573 (1980), establishes that police may enter a suspect's residence to make an arrest armed only with an arrest warrant if they have probable cause to believe that the suspect is in the home).

16

Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000) (citations omitted).

Here, Del Fava did not apply for plaintiff's arrest warrants; rather, the arrest warrants were issued for plaintiff's failure to appear at two municipal court hearings. Thus, Del Fava cannot be held to have falsely arrested plaintiff because he had no involvement in the issuance of the arrest warrants. Consequently, Del Fava is entitled to summary judgment on plaintiff's false arrest claim.

## CONCLUSION

For the reasons expressed above, defendants are entitled to summary judgment on all of plaintiff's claims. An appropriate Order will be entered.

Dated: April 23, 2008                    s/ Noel L. Hillman

At Camden, New Jersey                    NOEL L. HILLMAN, U.S.D.J.